Castle v. Houston.

## P. B. CASTLE v. D. W. HOUSTON.

1. LIBEL; *Defense, in Criminal Prosecutions.* In all criminal prosecutions for libel, the truth of the matter charged as libelous is not a full and complete defense unless it appears that the matters charged were published for public benefit; or in other words, that the alleged libelous matter was published for justifiable ends; but in all such proceedings, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact.

2. ———— *Defense in Civil Actions for Damages.* In all civil actions for libel, brought by the party claiming to have been defamed, where the defendant alleges and establishes the truth of the matter charged as defamatory, such defendant is justified in law, and exempt from all civil responsibility. In such actions, the jury must receive and accept the direction of the court as to the law.

3. ———— In a civil action prosecuted by a party to recover damages against the publisher of a newspaper for an alleged libel, and a plea of justification is filed, and thereon evidence of the truth of the matter published is submitted, and the court instructs the jury to the effect that "the fact of the language being true is not alone an answer to the charge, but can only be shown in mitigation of damages; that it is not a defense simply to show the truth of the matter published, but the party must go further and show that it was not only true but that he did it with good motives and for justifiable ends; that he had some purpose in view that was justifiable; that if the defendant acted honestly, for good purposes, and for justifiable ends, and what he said was true, then he is to be excused or acquitted;" and after a verdict for the plaintiff, on motion of the defendant, the court grants a new trial for misdirection of the jury, *held,* not error, as the instructions are not applicable in a civil action.

4. ———— *Pleading; Justification.* Where, in an answer to a civil action of libel, the defendant files the defense "that the matters charged as defamatory are true," and no motion is filed to make the answer more specific; no demurrer is presented thereto; no objections are taken on the

trial to the proof of the truth of the alleged libelous publication, and the court and all the parties treat the defense as one of justification on the ground of the truth of the publication, *held*, that it is too late after the verdict to attack such answer as insufficient as a plea of justification.

### *Error from Leavenworth District Court.*

CIVIL ACTION, brought by *Castle*, to recover damages sustained by him by reason of a certain alleged libel published by *Houston*. The defendant, *Houston*, was the editor and publisher of the *Daily Commercial*, a newspaper printed at Leavenworth, where *Castle* resided. In the winter of 1875, while the state legislature was in session at Topeka, *Houston* had a correspondent at Topeka, who wrote regularly for the *Commercial* in regard to proceedings and matters pending in the legislature. Previous to the meeting of the legislature certain adverse criticisms had been made in several quarters, notably in the annual report of the auditor of state, regarding the insurance department and its management; and the plaintiff, *Castle*, was generally credited with inciting and provoking such criticisms. The *Commercial's* correspondent was A. J. DOWNING, and he wrote over the signature, "JACK." The alleged libel appeared in one of "JACK's" letters, and is set out in the opinion, *infra*. The pleadings and proceedings in the district court are sufficiently stated in the opinion. The district court, at the May Term 1875, after verdict in favor of the plaintiff, on motion set aside such verdict, and granted a new trial; and from such order and proceeding, *Castle* appeals, and brings the case here on error.

*Byron Sherry*, and *Scott Ashton*, for plaintiff.

*T. A. Hurd*, for defendant.

The opinion of the court was delivered by

HORTON, C. J.: This was an action commenced in the district court of Leavenworth county, to recover damages for libel. The petition alleges in substance, that the defendant was editor, proprietor, and publisher, of the Leavenworth Daily Commercial, a newspaper printed in the city of Leav-

enworth, and that on the 20th of January 1875, there was published in the said paper, of and concerning the plaintiff, a certain false and malicious libel, in words as follows, to-wit:

"The insurance department of our state will in all probability be subject to a thorough investigation, as a bill has already been introduced into the senate to investigate. This is right. Every insurance company in the state is willing an investigation be had. Mr. Russell, ex-superintendent, invites it, and the present superintendent is anxious for the same.

"There is a cadaverous-looking individual of Leavenworth loafing around here who seems exceedingly anxious for an investigation, in hopes that the superintendent will be done away with and the department presided over by the auditor. A clerkship in the dim distance makes him enthuse. I cannot blame Castle much, knowing that board and other bills too numerous too mention have been pressing him for some time, and then doubtless the Northwestern Life would be glad to hear from him as he was published as a defaulter to that company. He is one of the most promising individuals (to his landlords) I know of, and the cry of fraud from such a completely played-out insurance agent has but little bearing with an intelligent body of legislators. If his caliber was as large as his bore, he would be a success. JACK."

In answer to the petition, defendant set up three defenses, *first*, an admission that the article complained of was published in defendant's paper, of and concerning the plaintiff, but denied that the same was published with malice; *second*, that defendant had no personal knowledge of the publication of the article at the time of its publication, with the further allegation, that the several matters and things in the article, complained of as defamatory, were true, and published for justifiable ends and purposes; and *third*, a general denial. To the answer plaintiff filed a reply, denying generally, save and except what was admitted, all the allegations in the answer. When the case came on for trial, it was submitted to a jury, and plaintiff obtained a verdict for $1,250, whereupon defendant gave notice of motion for a new trial, which was filed, and after being argued was by the court sustained, upon the ground that the court had erred in its instructions

to the jury. The plaintiff excepted, and has brought the case here for review.

It appears from the record that the court below granted the motion for a new trial on the ground that the jury was misdirected by the following instructions, viz.:

"The fact of the language being true, is not alone an answer to the charge, but can only be shown in mitigation of damages.

"It is not a defense simply to show the truth of the matter published, but the party must go further, and show that it was not only true, but that he acted with good motives and for a justifiable end, and that he had some purpose in view that was justifiable. If that be the case, if he acts honestly for good purposes and for justifiable ends, and what he says is true, then he is to be excused or acquitted."

In this condition of the case, we must first inquire whether the instructions above set forth were improperly given on the trial. If erroneous as a statement of the law controlling the case, they certainly may have misled the jury. If correct in principle, and applicable under the issues presented, the court erred in granting a new trial for the reason given. An examination of this question will lead to a brief review of the law of libel in both criminal and civil prosecutions, so far as to consider and determine when a defendant may be permitted to give the truth in evidence as a full justification of alleged libelous matter.

It was at one time the rule of the common law, that the truth of the charge, however honorable and praiseworthy the motives of the publisher, could not be given in evidence in a criminal prosecution. Hence originated the familiar maxim, "The greater the truth the greater the libel." This doctrine was based upon the theory, that where it was honestly believed a particular person had committed a crime, it was the duty of him who so believed or so knew, to cause the offender to be prosecuted and brought to justice, as in a settled state of government a party grieved ought to complain for an injury to the settled course of law; and to neglect this duty, and publish the offense to the world, thereby bringing the

party published into disgrace or ridicule, without an opportunity to show by the judgment of a court that he was innocent, was libelous; and if the matter charged was in fact true, (thereby insuring social ostracism,) the injury caused by the publication was much greater than where the publication was false. A false publication, it was contended, could be explained and exposed; a true one was difficult to explain away. As an additional reason for this rule, it was also held that such publications, even if true, were provocative of breaches of the peace, and the greater the truth contained therein the greater the liability of hostile meetings therefrom. That this was the true rule of the common law has been denied by many of the ablest jurists in both England and America, who maintained that the liberty of the press consisted in the right to publish with impunity, truth, with good motives and for justifiable ends, whether it respected government, magistracy, or individuals. It certainly was derived from the polluted source of the star-chamber, and was considered at the time an innovation, but like some other precedents, although arbitrarily and unjustly established, it came to be followed generally by the courts, and sustained as the law of the land. In 1804, in the state of New York, this principle of law was recognized and asserted in the case of *The People v. Croswell.* In that case the defendant was prosecuted for libel for having published in his newspaper, at Hudson, in that state, called the Wasp, the charge against Thomas Jefferson, then president, that he (Jefferson) paid Callender for calling Washington a traitor, a robber, and a perjurer. The defendant, through his counsel, Alexander Hamilton, applied to the judge at the circuit to put off the trial to obtain the testimony of Callender to prove the publication true. Lewis, C. J., presiding, denied the motion, because the testimony was inadmissible, as the truth of the facts charged as libelous did not amount to a complete justification. 3 Johns. (N. Y.) Cases, 336. This case attracted so much attention that, after a verdict of guilty had been rendered, and while the case was pending in the courts of New York

on a motion for a new trial, the legislature of that state passed a law providing that in every prosecution for writing or publishing any libel, it should be lawful for the defendant, upon the trial, to give in evidence, in his defense, the truth of the matter contained in the publication charged as libelous, and that such evidence should not be a justification, unless it should be further made satisfactorily to appear that the matter charged as libelous was published with good motives and for justifiable ends. Since the adoption of the New York statute declaratory of the law of libel in criminal actions, nearly every state in the Union has made the subject a matter of constitutional or statutory provision. The wise framers of our own constitution, peculiarly acquainted with the beneficial influences of free discussion and a free press, as participants in the historical incidents and conflicts surrounding the settlement of the territory of Kansas, modified the tyrannical and harsh rule of the common law as stated in the star-chamber of England, and thereafter generally understood and interpreted, by providing in section 11 of our bill of rights, that—

"The liberty of the press shall be inviolate; and all persons may freely speak, write, or publish their sentiments on all subjects, being responsible for the abuse of such right; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted."

Nevertheless, these framers, in a spirit of wisdom, and to preserve order, were careful not to give, as against the interests of the public, complete license even to the truth when published for the gratification of the worst of passions, or to affect the peace and happiness of society. They prescribe that the *accused* should be acquitted, not on proof of the truth of the charge alone, but it should further appear the publication was made for justifiable ends. Following the intendment of the constitution, the legislature afterward provided in the act relating to crimes and punishments that—

"In all prosecutions or indictments for libel, the truth

thereof may be given in evidence to the jury, and if it appears to them that the matter as charged as libelous was true, and was published with good motives and for justifiable ends, the defendant shall be acquitted." (Sec. 272, Gen. Stat. 376.)

But the law-makers, jealous of the liberty of the press, and fearing the construction of the law by the courts in such prosecution, further provided in a succeeding section of the same act, that—

"In all indictments or prosecutions for libel, the jury, after having received the. direction of the court, shall have the right to determine, at their discretion, the law and the fact." (Sec. 275, Gen. Stat. 377.)

While the rule of the common law, as generally applied, was so exacting and rigorous to the defense of justification in criminal prosecutions for libel, a different doctrine was applicable in civil cases. In the case of *King v. Root*, 4 Wend. 114, 139, Chancellor Walworth clearly states this difference as follows: "The difficulty which existed in England, previous to Mr. Fox's libel act, was, that in criminal prosecutions the defendant was not permitted to give the truth in evidence; and yet the jury were required to imply malice. But in civil cases, the defendant was permitted to give the truth in evidence as a full justification. Such was declared to be the law by the judges at the time that bill was under discussion in parliament, and there never has been any alteration of the law in England on this subject in civil suits." The case of *King v. Root*, supra, was originally tried at one of the circuits in New York before Hon. Samuel R. Betts. The defendants, King and Verplanck, were editors of the New York American, printed in the city of New York in 1824. These editors published concerning one Root, lieutenant-governor of that state, among other things, that in August of that year he addressed the state senate, then in session, "while blind with passion and rum, when he was unwashed, unshaven, haggard, with tobacco-juice trickling from the corners of his mouth, and in a condition outraging all order, decency and forbearance." Root brought a civil

action to recover damages for the alleged libel, and the defendants admitted the publication and pleaded the truth as justification. The trial judge instructed the jury, "if the defendants had only published the truth, they had an unquestionable right to do that, and they must be acquitted."

Blackstone, in his Commentaries, asserts that the truth could always be given in civil cases in justification of libel, and seems to consider the defendant's exemption in such instances as extended to him in consideration of his merit in having warned the public against the evil practices of a delinquent. He says that it is *damnum absque injuria*, intimating that the acts of the defendant, who justifies a libelous publication, does not constitute a wrong in its legal sense, and then proceeds to observe that this is agreeable to the reasoning of the civil law. (3 Bl. Com. 125.) This is illogical; and Starkie bases this exemption on the better reason, that in such instances the plaintiff has excluded himself from his right of action at law by his own misconduct, and not to any merit appertaining to the defendant. When a plaintiff is really guilty of the offense imputed, he does not offer himself to the court as a blameless party, seeking a remedy for a malicious mischief; his original misbehavior taints the whole transaction with which it is connected, and precludes him from recovering that compensation to which all innocent persons would be entitled. (Folkard's Starkie on Slander and Libel, Am. ed., § 692.)

There are many good and sufficient reasons why a publisher of a statement, true in fact, yet given to the public with a malicious design to create mischief, should be amenable to the criminal laws, and yet not be liable in a civil action. On general principles no right to damages can be founded on a publication of the truth, from the consideration that the reason for awarding damages in every such case fails. The right to compensation in point of natural justice is founded on deception and fraud which have been practiced by the defendant to the detriment of the plaintiff. If the imputation is true, there is no deception or fraud, and no right to com-

pensation. The criminal action in libel is supported to prevent and restrain the commission of mischief and inconvenience to society. Take the case of two men who agree to engage together in fisticuffs: the law for the protection of the peace of society, and to prevent greater collisions, may arrest and punish both combatants, and yet neither may be able to recover from the other personal damages. Where a person makes the publication solely to disturb the harmony and happiness of society, or to maliciously annoy and injure the feelings of others, or to create misery by exposing the latent and personal defects of associates or acquaintances, the interests of the public require some preventive notwithstanding the truth of the publication. This is furnished by the criminal law. But mere injury to the imagination or feeling, however malicious it may be in its origin, or painful in its consequences, is not properly the subject of remedy by an action for damages. Such offenses being unconnected with any substantive right, are incapable of pecuniary admeasurement and redress. They admit of no exact definition; and, therefore, to extend a remedy to such injuries generally, would be productive of great uncertainty and inconvenience, and open far too wide a field of litigation. Again, it seems to be clear that a party who acquires an advantage by concealing the truth, which he could not have attained to had he divulged it, so far is guilty of fraud in the concealment that he cannot upon any principle claim a right to acquire that benefit, and therefore cannot complain that he is injured by the publication of the truth. (Starkie, id., 35.) In this view the truth hurts no one.

In accordance with the doctrine that the defendant is justified in law, and exempt from all civil responsibility, if that which he publishes be true, it is provided in the civil code, section 126, that—

"In all actions mentioned in the last section, (libel and slander,) the defendant may allege the truth of the matter charged as defamatory, and may prove the same and any mitigating circumstances, to reduce the amount of damages, or he may prove either."

28—19 KAS.

This section of the code may be construed to mean, "in actions for libel or slander, the defendant may allege the truth of the matter charged as defamatory, and may prove the same (as a defense or full justification,) and (he may also allege) any mitigating circumstances (in the same answer) to reduce the amount of damages, or he may prove either (the truth as a defense, or mitigating circumstances to reduce the damages.)" In other words, under the code, the truth is a full justification in a civil action; and in the absence of justification, mitigating circumstances may be proved to reduce the damages; and justification and mitigation may be set forth in the same answer, and the defendant may prove either, or both. (Gen. Stat., 653.)

If it be contended that within the provision of the constitution, the proof of the truth as a defense in a civil action is no justification, except it be also made to appear that the publication was had for justifiable ends, we answer, that in view of the rule of law applicable in such cases at the time of the adoption of the state constitution, we do not think such a construction proper. It is not in accordance with the spirit or the letter of that instrument. It provides that in civil and criminal actions the truth may be given in evidence to the jury, and where an *accused* is on trial, that is, where a person charged with a crime for the publication of alleged libelous matter is being tried, he is not to be *acquitted* except the publication is true and the same was published for justifiable ends. In that event only is the *accused* party entitled to an acquittal. The word "*accused*" is used in the constitution; and an "accused" being one who is charged with a crime or misdemeanor, it cannot well be said to apply to a defendant in a civil action. If the motive of the party publishing the truth is to be considered in civil suits, under the constitution, then this section quoted, instead of operating to the protection of individuals charged in personal actions for damages for the publication of alleged libelous matter, as was doubtless intended by the framers of the constitution, would have the effect to hold parties responsible in cases

where at the common law they would be entitled to a verdict. The constitution contains no grant of powers to the legislature. It is only a limitation on the exercise of its authority; and the legislature, in its discretion, has the right to pass any act not violative of the state or federal constitutions. The object of section 11 of the bill of rights was to prevent the passage of any law in Kansas restraining or abridging the liberty of speech and of the press. By it, the harsh rule of the common law, as generally recognized in libel prosecutions, was greatly modified; but we cannot seriously think that it was intended thereby to abrogate that principle of the common law — sustained and upheld under the exacting and arbitrary construction of libels in England — that proof of the truth is a complete justification in all civil actions. Nor can we believe that thereby it was intended that the legislative power of the state was forever deprived of conferring the right upon a defendant in a civil action of libel to plead the truth of the words charged as a full and complete defense. To assert otherwise would be to assert that the constitution abridged and curtailed the liberty of the press in civil actions more than the common law — more than the provisions of the constitutions of other states. The modification of the common law by the constitution we construe in favor of the liberty of the press, not against it. To conclude otherwise would be to ignore the popular sentiment in Kansas at the adoption of the constitution, and assume that the successful contestants in behalf of a free press were forgetful in their victories of its powerful influences in their behalf, or had unwittingly deprived themselves of rights allowed in England under the sway of despotic monarchs and the rule of arbitrary judges. The constitution of Rhode Island provides, "in all trials for libel, both civil and criminal, the truth, unless published from malicious motives, shall be sufficient defense to the person charged." And it was held in that state that the truth of the charge is a good defense in a civil action for libel. (*Perry v. Mann,* 1 R. I. 263.) From our review of the authorities, the provision of our constitu-

.tion, the civil and criminal codes, we deduce these important principles:

*First:* In all criminal prosecutions, the truth of the libel is no defense unless it was for public benefit that the matters charged should be published; or in other words, that the alleged libelous matter was true in fact, and was published for justifiable ends; but in all such proceedings the jury have the right to determine at their discretion the law and the fact.

*Second:* In all civil actions of libel brought by the party claiming to have been defamed, where the defendant alleges and establishes the truth of the matter charged as defamatory, such defendant is justified in law, and exempt from all civil responsibility. In such actions the jury must receive and accept the direction of the court as to the law.

Under this view, the court below misdirected the jury in a very material point, and properly, on attention being again called to the matter by a motion for a new trial, granted such motion, and set the case again for hearing. The instructions given might have been applicable in a criminal proceeding, where the motive of the publication is important, and where the jury have the right to determine the law as well as the fact; but were erroneous in a civil action, where the facts charged were proven in justification. The instructions assumed that the truth is not a full and complete defense unless it was shown to have been published for good purposes and justifiable ends. This is not correct. If the charges made by the defendant are true, however malicious, no action lies. (*Root v. King,* 7 Cow. 613, 632; Townsend on Slander and Libel, § 211; *Foss v. Hildreth,* 10 Allen, 76; *Baum v. Clause,* 5 Hill, 196; 1 Stark on Sland. 229; *Rayne v. Taylor,* 14 La. An. 406.)

The plaintiff in error contends that the instructions could not have been prejudicial to the defendant in error, as the plea of justification was insufficient in form, and therefore the district court erred in granting a new trial. The answer among other things alleged "that the matters charged as de-

famatory were true." No motion was filed in the case to make the answer more definite or certain; no demurrer was presented; no objection taken to the evidence of the truth of the charge, as we can ascertain; and from the record we must assume that the case was tried on the theory that the defendant was attempting to show as justification the truth of the publication, and we may assume that the evidence tended to prove the truth of the publication. Under these circumstances the point now made by counsel of the plaintiff as to the immateriality of the instructions is not well taken. The case was heard by the district court on the supposition that the plea of justification was sufficiently formal — the instructions of the court discuss what is necessary to be shown to make the truth a full justification, and the jury having been misdirected in the hurry of the trial, no error was committed in setting aside the verdict. Had the action of the court been otherwise, on proper application, we would have reversed the judgment. If any delay has resulted to the plaintiff in error in obtaining a speedy trial, it has been caused by the pendency of this proceeding in error in this court, where it was brought by the plaintiff. For this action the defendant in error was not responsible.

The order of the district court setting aside the verdict of the jury in the case and granting a new trial is affirmed.

All the Justices concurring.

REPORTER'S NOTE.—The decision and opinion in the foregoing case when first announced attracted general attention, not only among members of the legal profession, but editors, journalists, and public men generally, as well, being the first authoritative exposition of the "LAW OF LIBEL," in this state. The construction given by the court to section 11 of the bill of rights, which had previously been much discussed, and upon which there was a wide difference of opinion, as prescribing one rule for civil actions, and another and different rule for criminal prosecutions, is new. Two constructions had previously been contended for—first, that in all actions for libel, civil and criminal, proof of the truth of the matter charged or alleged as libelous, was a complete defense, without regard to the motive or purpose with which the publication was made; second, that in all such actions, civil and criminal, the defense was not complete unless it was shown on the trial that the alleged libelous matter was true in fact

*and* that it was published from proper motives and for justifiable ends. As showing something of the opinions entertained by this latter class of constructionists, the following extract is made from an article written by "W. C. W." on Kansas journalism, and published in the Topeka "Daily Commonwealth" of 12th July 1877, under the heading, "ABOUT LIBELS:"

"And this brings us to the 'law of libel.' * * * We frequently notice in the newspapers of the day, and especially those conducted by the younger and more inexperienced journalists, the idea put forth or asserted, that whatever is true may be published by any newspaper with impunity. No more fearful mistake is made by any journalist regarding the conduct of his paper. 'The greater the truth, the greater the libel,' is a familiar law maxim. * * * This rule was founded upon the doctrine, that where it was honestly believed a particular person had committed a crime, it was the duty of him who so believed, or who so knew, to cause the offender to be prosecuted, and brought to justice; and to neglect this duty, and yet publish the offense to the world, thereby bringing the party published into disrepute and general disgrace without an opportunity to show by the judgment of a court that he was innocent, was slanderous, or libelous; and if the matter charged was in fact true, thereby insuring social ostracism, the injury caused by the publication was much greater than where the publication was false. A false publication could be explained and exposed—a true one was difficult to explain away. This rule of the common law still obtains in some of the American states. In some it has been modified, and in others it has been nearly abrogated. In Kansas it has been only modified. Here, the general rule still is, 'the greater the truth, the greater the libel.' The modification is found in our bill of rights—thus:

"'SEC. 11. The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, *being responsible for the abuse of such right;* and in all civil or criminal actions for libel, *the truth* may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted.'

"The meaning of this clause is, that if the 'alleged libelous matter' be *in fact true,* 'the *truth* may be given in evidence,' and a verdict rendered for the defendant in any action, civil or criminal, *if it shall satisfactorily* 'appear that the alleged libelous matter was published *for justifiable ends.*' But it requires *both* propositions to constitute a justification—the libelous matter must be true, and the ends for which the publication was made must have justified or warranted the publication. Publishing facts, solely to injure another, and not to benefit or protect the public, is not justifiable, but libelous; and publishing falsehoods, even though believed to be true, and from the best of motives to the public, is also libelous. This we believe is the correct construction of the clause in question. Journalists and others will therefore see that their first duty, before publishing a damaging statement against any one, is, to see to it that they get the truth; and next, to be sure that they are not actuated by personal spite, or malice, or partisanship merely, but that the interests of the public require the publication of the facts. And let them remember this—that if in a given case, a defendant in a libel suit should be able to prove his statement true, and yet unable to show that the *public interests* justified the publication, such *proof* and such *failure of proof* would be conclusive of the fact that his publication was *malicious,* and therefore libelous. If Kansas editors and journalists would study the 'law of libel' somewhat, we think Kansas journalism would be improved."

The views so expressed appear to have been correct with respect to *criminal* actions, but not so with respect to civil actions for damages. The distinction made by the court in the *Castle-Houston* case, between civil and

criminal actions did not, when announced, satisfy either class of the former disputants. Editors and journalists generally, contending for the "largest liberty" for the press, (which with some means the fullest freedom, *without legal responsibiltty for its abuse,*) regarded the decision of the court as right with respect to *civil* actions, but as erroneous with respect to *criminal* prosecutions; while many lawyers, and the more conservative among the journalists and public men generally, regarded the decision of the court as a proper exposition and construction of §11 of the bill of rights with respect to *criminal* actions, yet as erroneous with respect to *civil* actions. Immediately upon the announcement of such decision the general discussion was reopened. While it was conceded that *the law* was settled by the decision of the court, the correctness of the decision itself, upon principle and authority, was not universally acquiesced in. Some of the discussions then appearing in the newspapers are valuable contributions upon "*The Law of Libel*" in Kansas, and it may not be unprofitable to preserve them in connection with the official report of the case decided. To this end the following articles are appended. The two articles signed "G." were written by Hon. Robert Crozier, of Leavenworth, formerly the Chief Justice of the Supreme Court, and now Judge of the First Judicial District. The writer of the article signed "D." resides at Atchison, and is a lawyer of eminence, ability, and experience.

The Law of Libel.*—*To the Editor of the Commonwealth:* In the case of *Castle v. Houston,* recently decided by the supreme court of this state, it was held that in a civil action for libel, the truth of the alleged libelous matter was a complete defense. In the opinion of the court, delivered by Chief Justice Horton, the following may be found:

"*First:* In all criminal prosecutions the truth of the libel is no defense, unless it was for public benefit that the matters charged should be published; or in other words, that the alleged libelous matter was true in fact, and was published for justifiable ends; but in all such proceedings the jury have the right to determine at their discretion the law and the fact.

"*Second:* In all civil actions of libel brought by the party claiming to have been defamed, where the defendant alleges and establishes the truth of the matter charged as defamatory, such defendant is justified in law, and exempt from all civil responsibility. In such actions the jury must receive and accept the direction of the court as to the law."

Doubtless the court was right in the first of these propositions, but that it was correct in the second, is not so clear; and I beg to submit, modestly, some considerations bearing upon the subject. The following constitutional and statutory provisions are cited by the Chief Justice as applicable in the matter:

"The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted."—*Section 11, Bill of Rights.*

"In all prosecutions or indictments for libel, the truth thereof may be given in evidence to the jury; and if it appears to them that the matter charged as libelous was true, and was published with good motives and for justifiable ends, the defendant shall be acquitted."—*Section 272, Crimes Act.*

"In all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact."—*Section 275, Crimes Act.*

* This article was first published in the Topeka Commonwealth, March 5th, 1878.

"In all actions mentioned in the last section, (libel and slander,) the defendant may allege the truth of the matter charged as defamatory, and may prove the same, and any mitigating circumstances, to reduce the amount of damages, or he may prove either."— *Section 126, Civil Code.*

After stating the undeniable fact, and giving Mr. Starkie's reasoning in defense thereof, that in civil cases, in England, the truth is a complete defense, and having showed quite conclusively that the same rule obtains in the state of New York, the Chief Justice proceeds to argue that, notwithstanding the above quoted constitutional provision, the law is the same in Kansas; and of course he is right, unless this provision compels a different conclusion. In examining the subject it is to be constantly borne in mind, that the question is, What *is* the law? not, What should it be? As to the latter, different opinions may be entertained; but as to the former, there should be but one.

The Chief Justice concedes that in criminal cases, by reason of the constitutional provision above quoted, the truth of the alleged libel, of itself, is not, nor can it be made a complete defense; but he claims among other reasons, that because of the use of the word "*accused,*" the whole section, so far as the truth being an incomplete defense is concerned, is limited to *criminal* cases. That such was not the intention of the framers of the constitution, it seems to me is conclusively shown by the history and language of the section. In the officially published proceedings of the convention it appears, (pp. 100 to 103,) that on July 15th 1859, Mr. Hutchinson, chairman of the committee on preamble and bill of rights, reported, among other things, the following as the eleventh section of the proposed bill of rights:

"SEC. 11. The liberty of the press shall be *forever* inviolate, and all persons may freely speak, write, or publish their sentiments on all subjects, being responsible for the abuse of such right."

On July 18th, (p. 194,) the report of the committee being before the convention for consideration, Mr. Ingalls offered the following amendment, which was adopted:

"At the close of the section, add the following words: 'and in all actions for libel, the truth may be given in evidence to the jury; and if it shall appear *to the jury* that the alleged libelous matter *is true, and* was published for justifiable ends, the accused party shall be *discharged or* acquitted.'"

The report of the committee, thus amended, together with other portions of the constitution, having been referred to the committee on phraseology and arrangement, on July 25th, (p. 345,) that committee through Mr. Ingalls, its chairman, reported it back with amendments—among others the following:

"In section 11, strike out word 'forever.' * · * Before 'actions' read, (insert,) '*civil or criminal.*' After word 'jury,' read, 'and if it shall appear.' Strike out words, 'is true, and.' Strike out 'discharged or.'" * * *

"The several amendments recommended by the committee on phraseology and arrangement were then considered and concurred in, by sections."

Had the section remained as amended upon the motion of Mr. Ingalls, on July 18th, there would have been strong ground for the position that the words "accused," "discharged," and "acquitted," limited the word "actions," to criminal proceedings; not so much because of the words "accused," and "acquitted," (as they would be admissible, and sometimes are used, in civil proceedings,) but because of the word "discharged," which is used in reference to persons in criminal or *quasi* criminal proceedings alone. According to lexicographers, "accused" sometimes means "charged," "called to account;" and "acquitted," would be as appropriate in a civil as in a criminal proceeding for libel, as in either case the verdict for the defendant at common law would be "not guilty." As to the word "acquitted," the Chief Justice doubtless would agree with me, inasmuch as he cites with approval the case of *King v. Root,* 4 Wend. 414, a civil ac-

tion in which the trial judge instructed the jury that in a certain contingency, "the defendants must be *acquitted*."

But the section was not permitted so to remain. The attention of the convention was specially called to the language used; and as if for the sole purpose of prohibiting a construction that would limit the word "actions" to criminal proceedings, the committee on phraseology asked the convention to insert immediately preceding the word *actions* the very words of all others the most appropriate for that purpose, viz., "*civil or criminal*," and also to strike out "*discharged*," a word peculiarly appropriate in criminal proceeding. Had the conceded object of the convention been to prevent the very construction now placed upon the section by the supreme court, it would be difficult, in the light of history, to conceive of a more direct mode of attempting its accomplishment.

The Chief Justice attempts to fortify the position taken by the court by referring to the sections of the statutes above quoted; but in this, it seems to me, he is at least inconsequential, if not unfortunate. After quoting and commenting upon the constitutional provision, he says: "Following the intendment of the constitution, the legislature afterward provided in the act relating to crimes and punishments, that in prosecutions, or indictments for libel," etc., (setting out sections 272 and 275 above quoted.) Now, instead of the legislature "*following* the intendment of the constitution" in the enactment of these sections of the crimes act, they were in fact enacted by the territorial legislature in *February 1859*—five months before the convention met to frame the constitution, and more than two years before the first legislature under it assembled. (Gen. Laws 1859, pp. 280, 281, §§ 263, 267; Comp. Laws 1862, pp. 338, 339, §§ 263, 267.)

Again: The Chief Justice says: "In accordance with this doctrine * * * it is provided in the civil code, section 126," etc., (copying the section above quoted.) This section originated in New York in 1849, under a constitutional provision expressly limited to "criminal prosecutions or indictments." In 1852 the legislature of Ohio somewhat modified and adopted it, the language of their constitution being, "In all criminal prosecutions for libel," etc. In 1858 the territorial legislature of Kansas copied it from the Ohio code, verbatim; reënacted it in the revision of 1859, and it was carried into the revision of 1868, without the change of a word or letter, and so it stands to-day.* But we are told that this section, originally framed and reënacted under constitutional provisions thus limited, when found upon the statute-book of a state whose constitution is in express terms freed from such limitation, may be construed to mean—

"In actions for libel or slander, the defendant may allege the truth of the matter charged as defamatory and may prove the same (as a defense or full justification,) and (he may also allege) any mitigating circumstances (in the same answer) to reduce the amount of damages, or he may prove either (the truth as a defense, or mitigating circumstances to reduce the damages)."

Very manifestly this would be legislation, not construction. The constitution of New York says: "In all criminal prosecutions or indictments for libel;" that of Ohio, "In all criminal prosecutions for libel;" and the legislature of each state enacts a statutory provision thereunder long before our constitutional convention meets; yet it is said that the very same statutory provisions, under the constitution providing that "In all *civil or criminal* actions for libel," etc., may by construction be made to mean precisely the same thing in the latter, as in the former. Is it not putting it mildly to say, that the conclusion of the Chief Justice, from his own premises is inconsequential?

The Chief Justice cites but one adjudicated case in support of the position taken by the court. In no state constitution adopted before that of

*Gen. Laws of 1858, p. 84, § 125; Gen. Laws of 1859, p. 101, § 135; Comp. Laws of 1862, p. 145, § 135; Gen. Stat. of 1868, p. 653, § 126.

this state, can be found a provision upon this subject similar to that contained in our constitution, except in that of Rhode Island. There the language is, "In all trials for libel, both civil and criminal, the truth, unless published from malicious motives, shall be a sufficient defense to the person charged." This language would, to any person not a lawyer, seem to be so plain and comprehensible that comment would be superfluous. Yet a case is cited, and apparently relied upon by the Chief Justice, in which it is said that the truth, in a civil trial, is a complete justification, although published from malicious motives. I deny this case any weight, for two reasons: first, the language of the constitution of Rhode Island will admit of no such construction; and second, the decision is not that of a court of last resort in that state. The case was a trial before a jury, and the language referred to that of the trial judge in a charge to the jury, evidently uttered in the hurry of a *nisi prius* trial, upon a point not shown to have been in controversy in the case. It is but charitable to suppose that the charge was given by a judge who overlooked the fact that recently before such trial occurred a constitution embodying the clause above quoted had been adopted in Rhode Island, and that the old charter (which would have authorized such a view of the law) was not then in force.

In what I have said I have not the slightest disposition to lessen the great respect the people of the state entertain for the eminent tribunal whose decision is the subject of this communication. I hope I have been actuated by a spirit intensely in favor of the truth upon a subject vastly important to a people so eminently a writing and reading community as ours is known to be. While I hope it is unnecessary for me to say that I have great confidence in the ability, learning, and high purposes of the gentlemen composing the supreme court, I cannot think I am exceeding the duty of a citizen when I ask them to reëxamine the subject in the light of the foregoing considerations, some of which, very manifestly, were overlooked in arriving at the conclusion reached in the case referred to.          G.

THE LAW OF LIBEL.*—*To the Editor of the Champion:* Soon after the publication of the opinion in the case of *Castle v. Houston,* lately decided by the supreme court of this state, a newspaper printed in Kansas City, in commenting thereon severely censured that portion of the decision which held that the truth of a publication, alleged to be libelous, was not a complete defense in a criminal action. The position assumed by that paper, in view of the provisions of our state constitution and criminal statutes, was so palpably absurd that little attention was paid to this adverse criticism. Recently, a correspondent of the "Commonwealth," writing over the initial "G.," has sought to attack the decision on other grounds; and while fully indorsing the doctrine of the court criticised by the journal referred to, attempts to question the correctness of the principle that in all *civil actions* of libel the defendant is justified in law, and exempt from all civil responsibility, if he alleges and establishes the truth of the matter charged as defamatory. The communication is very ably and ingeniously written, and makes the best argument possible on that side of the question. Having had some experience in my own practice, in libel cases, and having, in years gone by, given the subject careful consideration, and differing entirely with "G." in the propositions and arguments advanced by him, I have a few thoughts to suggest in "reviewing the reviewer."

I read the opinion of the supreme court with great satisfaction and approval, and I assert most unhesitatingly, that the principles of law therein enunciated are based upon authority, reason, and justice; that a correct in-

*THIS article was first published in the Atchison Daily Champion, March 10th, 1878.

Discussion, on the "Law of Libel."

terpretation has been given to the provisions of the constitution and statutes quoted in the opinion; and that the members of the supreme court struck the golden mean in deciding, on the one hand, that the malicious and malignant libeler who assails the reputation of another without justifiable ends, solely to gratify his feelings of hate, or envy, or dissension, can be severely punished under the provisions of our criminal laws, even if the charges are true; and, on the other hand, that the impecunious vagabond or graceless scoundrel shall not be able to annoy newspaper editors, and obtain cheap notoriety, from a judgment of one cent and costs in a civil action of libel, as often as he is exposed, because on the trial the editor, although proving the truth of all the publications, fails to satisfy a jury of twelve men that his purposes were entirely worthy and commendable.

If it be said. that it is not justifiable ( because it cannot serve any good end) to publish a statement of acts committed by a person many years prior thereto, who has afterward reformed and lived uprightly, I answer, that all of this is true, and the opinion of the supreme court points out the protection which the law gives by a criminal prosecution in just such cases. Instead of leaving the matter in the hands of the person assailed, the public prosecutor of each county has the authority to have the violator of the law tried, convicted and punished. In this way, criminal prosecutions for libel are made to subserve a wholesome purpose, and cannot be used merely to aid personal ends, or gratify malice. The decision made in the *Castle-Houston* case is in favor of the liberty of the press; not its licentious use, or abuse. I challenge the production of any respectable authority, of any state north of Mason & Dixon's line, contrary to the decision, or holding that in a civil action of libel the truth is not a full justification, when sufficiently and properly pleaded. But it may. be answered that our constitution is *sui generis;* that no other state has ever adopted a constitution so arbitrary and oppressive against the rights of the press. This I deny ; and the very answer sought to be given is an argument against the conclusions reached by "G." The 11th section of the bill of rights was not intended by its framers to fetter or limit the publication of the truth, except as to authorize the enactment of laws to provide for the public prosecution of publishers of accusations or charges when they were not made for justifiable ends. This, undoubtedly, was on the principle that such publications tend to breaches of the peace, and thus to the disturbance of society at large.

"G." however claims that the history and language of said section 11 of our bill of rights make it clear that in civil actions the truth is not a complete defense, and asserts that when the conclusion of said section provides in what instances the *accused* party, on trial for libel, shall be acquitted, that the word *accused* embraces a defendant in a civil action, as much as a party arraigned upon an indictment or information. I confess I cannot see the force of the reasoning adopted by the critic in this regard, and am too obtuse to be convinced. If the word *accused* had not been intended to be limited to parties in criminal proceedings, the committee on phraseology in the constitutional convention would have changed the section to read, "and if it shall appear to the jury that the alleged libelous matter is true and was published for justifiable ends, the defendant in any civil or criminal action shall be exempt from all liability," or used other words to convey like import. Certainly, if the word *accused*, taken in conjunction with *acquitted*, was not intended to be restricted to criminal cases, the committee on phraseology was extremely unfortunate in the use of language.

It is said that *"accused"* sometimes means "charged," "called to account," and would be as appropriate in a civil as in a criminal proceeding for libel. Let us examine this view. It is a settled rule of construction, that in interpreting clauses or provisions of a constitution, we must pre-

sume that words have been employed in their natural and ordinary meaning. This is but saying that no forced or unnatural construction is to be put upon their language. Bouvier defines *"accused"* to be, "one who is charged with a crime or misdemeanor." No other definition is given. Webster defines *"accuse,"* "to charge with, or declare to have committed, a crime or offense; in law, to charge with an offense, judicially or by a public process; as, to *accuse* one of a high crime or misdemeanor." Worcester gives the meaning of *"accused,"* as, one "charged with a crime," and of the verb "accuse," says: "to *accuse* is a more formal transaction than charge." While the word "accused" *sometimes* means "charged," and "called to account," these are not its natural and ordinary significations; these are only the secondary, not the primary definitions. The framers of the constitution and the people who accepted it, employed the word *accused* in its natural sense, viz., "a person charged with a crime or misdemeanor." The attempt of "G." to construe it otherwise, is an act of subtlety and ingenious refinement to force a meaning which the framers of that instrument, in my humble opinion, never meant.

The fact that sections 272 and 275 of the crimes act, and section 126 of the civil code, were enacted prior to the time of the adoption of the constitution, and were retained in the compiled laws of 1862 without change, and were *afterward*, in 1868, reënacted, as stated in the opinion of the supreme court, is an argument of the legislative construction of section 11 of the bill of rights, as interpreted by our law-makers. Considering the construction of section 126 by the courts of New York and Ohio, (from which states we derive them,) it certainly is an anomalous section to have been retained by the revisers of·1868, if the truth is not a full defense in civil actions of libel. Following the intendment of the constitution, the legislature afterward (viz., in 1868,) provided in the act relating to crimes and punishments, that in all prosecutions and indictments for libel, the proceedings should be had as set forth in said sections 272 and 275 ; and further provided, in 1868, by the reënactment of said section 126, as construed by the New York and Ohio courts, that "in civil actions for libel or slander, the defendant may allege the truth of the matter charged as defamatory, and may prove the same (as a defense or full justification,) and (he may also allege) any mitigating circumstances (in the same answer) to reduce the amount of damages, or he may prove either the (the truth as a defense, or mitigating circumstance to reduce the damages)."

"G." denies the case of *Perry v. Mann*, cited from 1 R. I. Rep. 263, as of any weight, for two reasons, which he gives as follows: "first, the language of the constitution of Rhode Island will admit of no such construction; and second, the decision is not that of a court of last resort in that state. The case was a trial before a jury, and the language referred to that of the trial judge in a charge to the·jury, evidently uttered in the hurry of a *nisi prius* trial, upon a point not shown to have been in controversy in the case. It is but charitable to suppose that the charge was given by a judge who overlooked the fact that recently before such trial occurred, a constitution embodying the clause above quoted had been adopted in Rhode Island, and that the old charter (which would have authorized such a view of the law) was not then in force." To this I answer, that the constitution of Rhode Island will admit of the construction given in *Perry v. Mann*, supra, notwithstanding its unusual and peculiar terms. According to the law-writers, "good motives and justifiable ends" are shown and sustained in civil cases by proof of the truth alone. "Were the truth in such cases to be no defense, it would follow that a guilty man would be entitled to far greater damages, in respect of a true representation, than an innocent man could claim in respect of a false one." Unfortunate indeed would be the result if such a doctrine should be established by our court of last resort.

Recurring to the Rhode Island authority, I find upon investigation that the opinion was delivered by the Chief Justice of the supreme court of that state in 1849; that the constitution then in force had been framed and adopted in 1842, and there had been no recent change in the organic law, or charter, shortly prior to the trial, as "G." intimates. On further examination, I find that in 1849 the judicial power of that state was vested in one supreme court, and in such inferior courts as the general assembly might from time to time ordain and establish; that the judges of the supreme court should, in all trials, instruct the jury in the law; and from the statutes of that state, I also ascertain the supreme court then consisted of one chief justice and three associate justices, and that they, or two of them, composed the court; that the court had jurisdiction of all actions and pleas of a civil nature, in law and equity, brought legally before it; that such court was required, when requested by the reporter, to communicate to him a statement of their decision or opinion in any case, and from these the reports of that state were published. (P. L. of R. I., 54–88.) Hence it is scarcely possible that the opinion or charge of the supreme court in the case cited could have been uttered in the hurry of the trial; otherwise, when furnished to the reporter, it would have been corrected, if erroneous, or likely to mislead.

Even assuming "G." to be correct in his belief that the word "*accused*" in the bill of rights was intended to apply to a defendant in a civil as well as a criminal action, still, unless the 11th section is construed to restrict and abridge the freedom of the press, the legislature had the power, by the reënactment of section 126 of the civil code in 1868, attended with the construction given it in New York and Ohio, to make the truth a full justification in civil actions of libel. "Where one state adopts a law from* another, the judicial construction given to the statute in the state where it originated follows it to the state of its adoption." "G." concedes that in New York and Ohio section 126 has been construed as interpreted by our court. If our constitution is subject to the construction attempted by "G.," why the great difference in the provisions of sections 272 and 275 of the crimes act, in relation to libel prosecutions, and section 126 of the civil code, relating to civil actions? Why are the defenses in civil actions of *libel* and *slander* of the same character? Will any one claim that the truth is not a justification in a *slander* suit?

Since our laws were compiled in 1862, and revised in 1868, why have not the provisions of sections 272 and 275 been substantially embraced in section 126 of the civil code, if like defenses were applicable in civil and criminal suits? No other answer can be given, than that in libel and slander actions of a civil nature the truth has always been deemed a complete justification. This is the reason of the different provisions in these sections of the civil and criminal codes.

But further, if the word "*accused*" applies to civil actions, even then the truth of the publication in a civil action would be a full defense. There can be no basis upon which damages can be founded in a civil action for libel, where the charge is true. In the words of the supreme court: "Such offenses being unconnected with any substantive right, are incapable of pecuniary admeasurment and redress." Exemplary or punitive damages cannot be awarded in the absence of compensatory damages; nominal damages are allowed only as compensation, and where the charge is true, but published from unworthy motives, no compensation can be granted; hence no exemplary damage. Therefore no nominal or other damages, and the result, no cause for action.

I admit the question involved in this controversy is of vast importance, and I have attempted to consider it in the same spirit of truth and candor as actuated "G." We are a reading, writing, and publishing people, and if our constitution compels every defendant in a civil action of libel, when

Castle v. Houston.

the publication is admitted, to not only prove the truth of the publication, but to go further, and by additional evidence establish that it was made for justifiable ends, we need at once a new constitution, which will not shadow forth perpetual apprehension of litigation, and forever terrify the conscientious editor with fear of infinite vexation. If this construction is to be given to that instrument, then its framers were not imbued with the spirit of the age; and instead of "the liberty of the press being inviolate," we have taken already one step in the path pursued by President McMahon in republican ( ? ) France, where in the case of the radical *Mot d' Ordre*, the manager was fined $1,000 for publishing a reflection on that official's Irish ancestors. Happily, our supreme court has not thus construed the provisions of our constitution in civil cases of libel; and a reëxamination of the late libel case would, in view of the authorities bearing upon the matter, if properly presented, only more strongly and forcibly evince the wisdom of the decision already made. In civil actions of libel, the proof of the truth is proof of the "good motives and justifiable ends" of the publication.                                                        D.

THE LAW OF LIBEL AGAIN.*—*To the Editor of the Commonwealth:* Soon after the publication of my former article on the law of libel, there appeared in the Atchison "Champion" a communication over the signature "D.," upon the same subject, to which I beg the indulgence of a brief reply.

I controverted the correctness of the decision in *Castle v. Houston* upon the sole ground that the supreme court had erred in the construction of section 11 of the bill of rights; and, in support of my position, gave the recorded history of the insertion therein of the words, "civil and criminal," before "actions." I thought there was some significance in the fact, that after the remainder of the section had been adopted these words were inserted by a direct vote of the convention, while "D." not only makes no reference to this circumstance, but wholly ignores their presence for any purpose. I conceded that, as originally adopted, by reason of the words "accused," "acquitted," and "discharged," the section might have been reasonably held to apply to criminal proceedings alone, but insisted that the convention meant something by striking out "discharged," and inserting "civil and criminal." "D." differs with me because "accused" was not also stricken out and "defendant" inserted. The bar can judge between us.

In regard to the Rhode Island case cited by the Chief Justice, "D." says: "It is scarcely possible that the opinion or charge of the supreme court in the case cited could have been uttered in the hurry of the trial; otherwise, when furnished to a reporter, it would have been corrected, if erroneous, or likely to mislead." I suppose this means, that when the Judge furnishes his charge to the reporter for publication, he shall not write out what he actually did say to the jury, if erroneous, but shall write what he should have said. What is to be thought of the morals of such a course, to say nothing of the impropriety thereof?

In commenting upon this Rhode Island case, "D." says: "According to the law-writers, good motives and justifiable ends are shown and sustained in civil cases by proof of the truth alone." The language of the constitution of that state is: "In all trials for libel, *both civil and criminal*, the truth, unless published for malicious motives, shall be a sufficient defense to the person charged." Certainly it must be conceded by the veriest "schoolman," that the words, "trials," "defense," and "charged," are equally proper and appropriate in civil and criminal proceedings. Now suppose, for publishing a libel, a person is proceeded against both civilly and criminally,

---

*THIS article was first published in the Topeka Daily Commonwealth, April 23d, 1878.

as may be done: is it to be said, under such a provision, that "good motives and justifiable ends" are shown and sustained by proof of the truth upon the "trial" in the one case, and not in the other? If so, upon what word or phrase can such a distinction be based? Yet we are told that it must be so because the supreme court of Rhode Island has thus decided; *i. e.*, folly, rained upon judges' heads, necessarily becomes wisdom when filtered through judicial wigs!

In conclusion, I beg to say to my reviewer, that he seems to have wholly misconceived the purpose of my former communication. It was no part of my object to discuss the policy or impolicy of the provision in our constitution; but to ascertain the signification of the language used, and show, by its own action, the intention of the convention in framing it, while he, from the supposed impolicy of the provision as construed by me, argues that the convention must have meant nothing in inserting the words "civil or criminal," and that with, or without them, the section would mean the same. Upon the question of policy, we might agree; upon the question of law, it seems we cannot.                                               G.